PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

KELSEY C. DAVIDSON (CABN 322323)
Assistant United States Attorney

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    FAX: (510) 637-3724
    kelsey.davidson@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 4:22-CR-00355-JST-1 |
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | Court: Hon. Jon S. Tigar |
| EBIN ROSALES-JIMENEZ, | Hearing Date: May 2, 2025 |
| Defendant. | Hearing Time: 9:30 a.m. |

## I. INTRODUCTION

The defendant sold fentanyl to an undercover officer multiple times and was part of a conspiracy to do so. In total, the defendant is responsible for selling 277.188 grams of fentanyl and 28.623 net grams of methamphetamine in a span of less than three months. Fentanyl is currently wreaking havoc in the community and just two milligrams can kill an adult. The defendant has two other arrests for dealing narcotics: one that occurred one month prior to the beginning of the conspiracy here and one in January 2024. He also has two prior removals from the United States. Given the seriousness of the offense, the need to protect the public, the history and characteristics of the defendant, and the need for deterrence, the government respectfully requests that the Court sentence the defendant to 42 months of imprisonment and three years of supervised release.

## II. OFFENSE CONDUCT

The government generally agrees with the recitation of the offense conduct in the Presentence Investigation Report (PSR) prepared by the Probation Office. PSR at ¶¶ 7-13. Beginning June 7, 2022 and continuing for the next three months, the defendant agreed to join a conspiracy with his co-defendant, Brayan Nunez-Gonzales, to sell fentanyl on multiple occasions. He also sold methamphetamine.

On June 2, 2022, an undercover officer ("UC") was contacted via text message about purchasing fentanyl from a phone number associated with a prior narcotics dealer. The UC arranged a controlled buy of "fetti" (fentanyl) with the user of the telephone number for June 7, 2022. When the UC arrived at the meeting location, Rosales-Jimenez sold the UC four ounces of fentanyl for $2,400 and told him he was in control of the telephone number. The narcotics later tested positive for fentanyl and weighed 110.8 net grams.

On June 28, 2022, the UC contacted Rosales-Jimenez to purchase two ounces of fentanyl on June 30, 2022. The UC texted Rosales-Jimenez when he arrived at the buy location, and Rosales-Jimenez stated he would be there soon. Rosales-Jimenez then had a series of calls with Nunez-Gonzales before Nunez-Gonzales arrived at the buy location and got into the UC's car. Nunez-Gonzales told the UC that Rosales-Jimenez was at home, and then sold him two ounces of fentanyl for $1,200. Nunez-Gonzales opened another bag and showed the UC approximately two ounces of suspected methamphetamine and six grams of heroin. At some point, Nunez-Gonzales then made a call to Rosales-Jimenez to discuss

prices, including for black tar heroin. Nunez-Gonzales gave the UC a bag with several small amounts of fentanyl for free and left the car. The narcotics later tested positive for fentanyl and weighed 71.73 net grams.

On August 3, 2022, the UC contacted Rosales-Jimenez to set up another buy of two ounces of fentanyl for August 4, 2022. When the UC arrived, Nunez-Gonzales got into the UC's car and gave him fentanyl in exchange for $1,200. The narcotics later tested positive for fentanyl and weighed 62.5 net grams.

On August 24, 2022, the UC contacted Rosales-Jimenez to set up a controlled buy for an ounce of fentanyl and an ounce of methamphetamine for August 25, 2022. On August 25, 2022, agents conducted surveillance of the apartment that Rosales-Jimenez and Nunez-Gonzales had previously been seen going into. Agents observed both Rosales-Jimenez and Nunez-Gonzales leave the apartment, go to a money transfer service, and then go to the meeting location. When the UC arrived, both Rosales-Jimenez and Nunez-Gonzales were standing on the sidewalk together. Rosales-Jimenez then went to the UC's car and sold the UC an ounce of fentanyl and an ounce of methamphetamine in exchange for $1,000. Rosales-Jimenez and Nunez-Gonzales drove off together and went back to the same apartment. The narcotics later tested positive for fentanyl and methamphetamine respectively and weighed 29.458 net grams (fentanyl) and 28.623 net grams (methamphetamine). The methamphetamine had a 100% purity.

Before any arrests were made, Nunez-Gonzales and Rosales-Jimenez traveled together to Denver, Colorado according to the ping data on both of their cell phones. Nunez-Gonzales was arrested in Denver shortly thereafter.

The defendant admitted that he was responsible for distributing and possessing a total of 277.188 grams of fentanyl, which includes the two times he personally sold narcotics to the UC and the two times his co-conspirator sold narcotics to the UC, and 28.623 grams of methamphetamine.

### III.    PROCEDURAL HISTORY

On September 15, 2022, the grand jury returned a five-count Indictment against the defendant and his co-conspirator. Dkt. 1. The defendant was charged with one count of Conspiracy to Distribute and Possession with Intent to Distribute 40 Grams and More of Fentanyl in violation of 21 U.S.C. §§ 846, 841(a)(1), and (b)(1)(B)(vi), two counts of Possession with Intent to Distribute and Distribution of 40

Grams and More of Fentanyl in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vi), and one count of Possession with Intent to Distribute and Distribution of 5 Grams and More of Methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii). *Id.* On September 19, 2024, a four-count Superseding Information was filed in the Northern District of California charging the defendant with one count of Conspiracy to Distribute and Possession with Intent to Distribute Fentanyl in violation of 21 U.S.C. §§ 866, 841(a)(1), and (b)(1)(C), two counts of Possession with Intent to Distribute and Distribution of Fentanyl in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and one count of Possession with Intent to Distribute and Distribution of Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(c). Dkt. 65. On September 19, 2024, the defendant pled guilty to all four counts in the Superseding Information pursuant to a plea agreement. Dkt. 79.

**IV. SENTENCING GUIDELINES CALCULATIONS**

The government agrees with the Probation Office's calculation of the Sentencing Guidelines in the Presentence Report. PSR at ¶¶4, 20-29. Specifically, the government agrees that the calculations are as follows:

| U.S.S.G. Section | Points |
|---|---|
| Base Offense Level – § 2D1.1 (at least 1,000 kg but less than 3,000 kg of converted drug weight) | +30 |
| Zero-Point Offender – § 4C1.1(a) and (b) | -2 |
| Acceptance of Responsibility – § 3B1.1(a) | -3 |
| **Total Offense Level** | **25** |

The government agrees that the defendant is in Criminal History Category I, which yields a Guidelines range of 57 to 71 months' imprisonment.

**V. APPLICABLE LAW**

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Guidelines. *Id.* After determining the appropriate Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *Carty*, 520 F.3d at 991–93.

Under 18 U.S.C. § 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider these factors applicable to this case, among others:

(1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)  the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3)  the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4)  the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(5)  the need to provide restitution to any victims of the offense.

## VI.  RECOMMENDED SENTENCE AND SECTION 3553(A) FACTORS

Based upon a consideration of the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the government respectfully recommends that the Court impose a sentence of 42 months of imprisonment and three years of supervised release. The nature and circumstances of the offense, history and characteristics of the defendant, the need to protect the public, the seriousness of the offense, and the need for deterrence all support a sentence of 42 months, which is sufficient, but not greater than necessary to comply with the purposes set forth in § 3553.

The nature and circumstances of the offense warrant a 42-month sentence. The defendant personally sold five ounces of fentanyl and one ounce of methamphetamine to the UC, and his co-conspirator sold another four ounces. Combined, the defendant is responsible for distributing 277.188 grams (over half of a pound) of fentanyl in less than three months. It is also evident that he is more culpable than his co-defendant. Moreover, the seriousness of the offense and need to protect the public also weigh in favor of a sentence of 42 months. All controlled substances are dangerous, but none more so than fentanyl. Just two milligrams can kill an adult. Hundreds of people in the Bay Area die of overdoses every year, and thousands more ruin their lives through addiction. The defendant may not have created the fentanyl epidemic, but he contributes to and profits from it. Moreover, a sentence of 42-months will also serve to not only deter the defendant but others as well.

Additionally, the history and characteristics of the defendant warrant 42-month sentence. Despite being arrested in May 2022—the month before joining the conspiracy, *see* PSR at ¶ 37—the defendant

continued to sell narcotics. Approximately two years later, the defendant was again arrested in Utah for drug dealing. Declaration of Kelsey C. Davidson, Exhibit 1. In January 2024, a CI told law enforcement that they could buy fentanyl from someone he knew as "Max." *Id.* at 4. The CI, at the direction of law enforcement, purchased fentanyl from "Max" at an address on Amber Ridge Lane. *Id.* A Facebook account was located for "Max" with the name "Najson Flores," and the CI positively identified Najson as the person he had been speaking with and the person he purchased fentanyl from. *Id.* Law enforcement later executed a warrant at the Amber Ridge Lane address and detained the defendant. *Id.* at 4-5. The defendant told law enforcement that "Najson Flores" is a fake name he uses for his accounts. *Id.* at 5. This incident shows not only that the defendant continued to sell drugs years later, but also that his methods became more sophisticated and he began using fake aliases in order to avoid getting caught. Moreover, the defendant was removed from the United States twice before (in 2016 and 2018) and returned to the U.S. again, which shows a history of lack of compliance with court orders. PSR ¶¶ 35-36. On the other hand, the defendant grew up in poverty in Honduras and was kidnapped by members of the cartel where he was beaten and ultimately hospitalized.

Moreover, a sentence of 24 months would not lead to unwarranted sentence disparities with his co-defendant, Nunez-Gonzales, who received 24 months. First, all defendants have unique histories and characteristics and should be judged separately. *See, e.g.*, Dkt 51 (Nunez-Gonzales Sentencing Memorandum detailing the daily abuse he suffered as a child, his substance abuse problems, and the fact that he was 19 years old at the time). The defendant has two prior removals, is older than Nunez-Gonzales, and continued to deal drugs two years later. Second, the defendant was more culpable than his co-defendant and was the one arranging the buys. Third, the defendant sold the UC methamphetamine resulting in a higher guidelines calculation.

Given all of this, the government believes a small downward variance from the Guidelines (57-71 months) is appropriate. A sentence of 42 months is therefore sufficient but not greater than necessary, and will protect the public, reflect the seriousness of the offense, and provide adequate deterrence.

## VII. CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court impose a sentence of 42 months of imprisonment followed by three years of supervised release.

U.S. SENTENCING MEMO         6

1  DATED:  April 25, 2025

Respectfully submitted,

PATRICK D. ROBBINS
Acting United States Attorney

_____/s/_____
KELSEY C. DAVIDSON
Assistant United States Attorney